UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | : | CASE NO. 1:08-cr-118 |
|---|---|---|
| v. | : | |
| RAYMOND TATE | : | MATTICE/CARTER |

REPORT AND RECOMMENDATION

I. Introduction

Defendant, *pro se*, has filed a Motion to Suppress and Dismiss [Doc. 37]. He seeks to have suppressed evidence obtained during two separate incidents: a controlled drug buy on June 26, 2008 and statements he made immediately following his arrest on drug charges several weeks later. Defendant has been indicted on one count of distribution of more than 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). For the reasons stated herein, it is RECOMMENDED that defendant's Motion to Suppress and Dismiss be DENIED.

II. Facts

An evidentiary hearing was held on defendant's motion to suppress before the undersigned Magistrate Judge on July 9, 2009 and continued on August 26, 2009. Detective Andy Browne of the Hamilton County Sheriff's Department was the sole witness on both July 9 and August 26, 2009. He testified to the following:

On June 26, 2008, he and another officer set up a police controlled narcotics sale (controlled buy) from the defendant to a confidential informant (CI). The CI had approached law enforcement and offered to conduct a controlled buy of crack cocaine from the defendant. The CI agreed to carry in her bag concealed electronic equipment which both recorded audio and

1

transmitted audio to police. On June 26, 2008, Det. Browne and Det. Bailey met with the CI and provided government funds to purchase crack cocaine and a remote transmitting device. The CI had arranged with the defendant to make a purchase of crack cocaine in the Bi-Lo parking lot located on Highway 58 in Chattanooga, Tennessee. Det. Browne and Det. Bailey followed the CI to the Bi-Lo parking lot. Det. Browne testified at the suppression hearing that "I was parked near to the informant where I would observe the informant's actions and Det. Bailey was slightly away from us. He was actually monitoring the wire that was on the informant." Det. Browne observed the defendant pull up, the CI exit the CI's vehicle, and the CI enter the defendant's black Chevrolet Impala. Det. Browne then observed some movement in the defendant's vehicle. The CI exited defendant's vehicle, entered her vehicle, and drove off. Detectives Browne and Bailey then followed the CI to a prearranged location and recovered from the CI crack cocaine and the electronic recording devise.

The defendant did not know the CI was carrying electronic equipment in her bag which recorded and transmitted conversations. Police had not obtained a judicial order of any kind authorizing use of electronic equipment to record the controlled buy. The device was transmitting the conversation between the defendant and the CI concerning the drug buy to Det. Bailey.

The defendant was not arrested immediately following this controlled buy on June 29, 2008. Instead, a state warrant for the defendant's arrest was obtained on the basis of the controlled buy. Several weeks after the controlled buy took place, Det. Browne was in his vehicle in the Shepherd neighborhood of Chattanooga when he spotted the defendant in his black Chevrolet Impala. Det. Browne followed the defendant in his vehicle to a residence in the neighborhood. When the defendant entered the house, Browne called for back-up and waited for

the defendant to come back outside. When the defendant exited the house, police placed him under arrest.

A crowd gathered immediately after the defendant's arrest, and the defendant turned to the crowd and asked several times, "who do you think did me?" or "who did me?" People in the crowd offered some names in response. Browne, in an attempt to protect the CI, told the defendant he (defendant) had sold drugs to an undercover officer. Officers did not question the defendant at the scene of his arrest. Browne testified he thought, but could not be sure, that another detective gave the defendant his Miranda warnings at the scene of the arrest.

Several exhibits were introduced during the course of the suppression hearing: the Investigative Report prepared by Det. Browne and dated 6-30-08 (Defendant's Ex. 3); the Affidavit of Complaint signed by Det. Browne, dated 9-8-08 and submitted in support of the arrest warrant for defendant, (Defendant's Ex. 2) and Det. Browne's November 11, 2008 testimony before the federal grand jury. (Defendant's Ex. 1).

The contents of the Investigative Report and the Affidavit of Complaint addressing the events of June 26, 2008 are identical. They state in pertinent part: Detectives Browne and Baily met with a CI for the purpose of conducting a controlled buy of cocaine from the defendant. The CI "was provided with $2000.00 in recorded government funds, along with a remote monitoring device, allowing detectives to listen to [the CI's] activities." The CI met Tate in the Bi-Lo parking lot on Highway 58. Det. Browne observed Tate arrive and saw the CI enter Tate's Black Chevrolet Impala. The CI bought an amount of crack cocaine for $1,800, left Tate's car, and drove to the pre-arranged meeting location where the CI provided Det. Browne with "a large amount of cocaine."

In his grand jury testimony, Det. Browne testified in relevant part:

3

On June 26th of 2008 we arranged to make the purchase of two ounces of crack cocaine from Raymond Tate. Mr. Tate set the location for the Bi-Lo grocery store on Highway 58 in Chattanooga. We set up surveillance on the lot of the Bi-Lo, had a confidential source who [sic] we searched, along with searching their vehicle, provided them with a remote monitoring and recording device and also provided them with $2,000 in recorded government funds, basically photo-copied money.

Mr. Tate showed up on the lot and parked directly in front of me, and the confidential informant pulled up beside him. The informant got out of the vehicle and got into Mr. Tate's vehicle. He was driving a black Chevrolet Impala. While they were in the vehicle together, I was able to monitor the conversation between the two of them. It was obviously a drug conversation taking place.

The informant negotiated the price on the crack cocaine down to $1,800, provided Mr. Tate with the $1,800, and he in return provided us with what turned out to be 55.6 grams of crack cocaine.

The informant then got back into their vehicle and left, and we followed the informant to a meeting location that we had arranged, let Mr. Tate leave the area. The informant provided us with the remaining $200 and the crack cocaine which had been purchased. We also again searched the informant and searched their vehicle. And at that point the informant said that they had seen a larger amount of crack cocaine still left in the vehicle.

(Defendant's Ex. 1, Grand Jury Testimony at 3-4).

### III. Analysis

Defendant seeks to suppress evidence in the form of the audio recording of the controlled buy which occurred on June 26, 2008 and his statements given immediately following his arrest in which he asked, "who do you think did me?" or "who did me?"

*Detective Andy Browne's Credibility*

The defendant seeks to undermine Det. Browne's credibility by pointing out what the defendant believes are material inconsistencies among Det. Browne's statements in his affidavit of complaint (Affidavit), his grand jury testimony, and his testimony on July 9, 2009 during the suppression hearing. Specifically, the defendant argues that Det. Browne's testimony regarding who (Det. Browne or Det. Bailey) monitored the drug buy on June 26, 2009 is not consistent. According to the defendant, Det. Browne stated in his Affidavit that "both he and Detective

4

Bailey were monitoring and recording via the electronic surveillance device during the controlled narcotics purchase on June 26, 2008." (Defendant's Supplemental Brief at 1, Doc. 98). Defendant also asserts that Det. Browne testified before the grand jury "that he (Browne) was monitoring the surveillance." *Id.* Defendant further contends that during the suppression hearing on July 9, 2009, Det. Browne "stated twice that Det. Bailey was the one monitoring and recording via electronic surveillance." *Id.* According to the defendant, "[s]uch false statements of Detective Browne were willfully made assertions on his behalf, by him, while testifying under oath.... [T]he only way that Detective Andy Browne could have actual direct knowledge of the defendant's alleged effects while in the vehicle alone with Shanika is by monitoring and recording the defendant's effects via the electronic surveillance devices, about which he consistently and falsely testified." *Id.* at 2.

The undersigned is not exactly sure what is the point of this particular argument of defendant. The defendant appears to be arguing that the government cannot present a credible witness to prove that he sold crack cocaine to the CI when the CI sat in defendant's vehicle on June 26, 2008 in the Bi-Lo parking lot. However, the purpose of the suppression hearing is not to determine whether the government has enough evidence to convict the defendant. It is only to determine whether the evidence to be used against the defendant was obtained in an unconstitutional manner which requires suppression of the evidence at the trial of his case. In any event, the undersigned concludes that Det. Browne's testimony, while not always specific, was not inconsistent. Both Det. Browne and Det. Bailey "monitored" the controlled buy. Browne "monitored" it in the parking lot by visual observation; Bailey "monitored" it in the parking lot by auditory, electronic means. To the extent they were working closely together on the same investigation and sharing their information, they were both "monitoring" visually and auditorily.

5

The undersigned finds nothing in Det. Browne's Affidavit, his grand jury testimony or his testimony from the July 9, 2009 suppression hearing to undermine his credibility. To the contrary, the undersigned concludes his testimony has been very consistent, and he is a credible witness.

*Audio Recording of the Controlled Buy*

The defendant contends that because police did not obtain a warrant or another form of judicial authorization before engaging in electronic surveillance of him on June 26, 2008, then the recording of the controlled buy violated the Fourth Amendment and must be suppressed. Defendant reasons that use of the cooperating CI to make the controlled buy constituted a *de facto* government search without a warrant and without his consent which violates the Fourth Amendment. Defendant relies on *Katz v. United States*, 389 U.S. 437 (1967) and *Georgia v. Randolph*, 547 U.S. 103 (2006) to support his arguments.

In *Katz*, police, without a search warrant, attached an electronic recording device to the outside of a public phone booth known to be used by the petitioner, Katz. Katz's end of a telephone conversation was recorded, and Katz was convicted of transmitting from one state to another gambling information by telephone in violation of federal law. The government argued that because the telephone booth was a public place and the electronic recording device had not been inside the booth, recording the conversation met Fourth Amendment standards. The Court disagreed holding that "[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Katz*, 389 U.S. at 353. The Court further held that because police had not

6

obtained a judicially authorized warrant to record the conversations, Katz' conviction must be reversed. *Id.* at 358-59.

Defendant Tate argues that, pursuant to *Katz*, because police had no warrant authorizing the police to electronically record the controlled buy between Tate and the CI, police violated Tate's Fourth Amendment rights by recording the controlled buy, and the recording must therefore be suppressed.

But *Katz* does not apply here because, unlike in *Katz*, police in this case made the electronic recording using a confidential informant who knew that the CI's and the defendant's conversation was being recorded and agreed that it would be recorded. The Supreme Court addressed just such a situation in *United States v. White*, 401 U.S. 745 (1971) – four years after its decision in *Katz*. In *White*, police were able to electronically eavesdrop on conversations between the defendant and the confidential informant because the confidential informant wore a radio transmitter. Police did not have a warrant authorizing recording of the conversations. These recorded conversations were used at trial to convict the defendant for illegal narcotics trafficking. The defendant argued the recorded conversation must be suppressed pursuant to *Katz*. The Supreme Court disagreed, however, finding that the defendant did not have a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police. *Id.* at 749 -52. As the Supreme Court explained:

> however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, no interest legitimately protected by the Fourth Amendment is involved, for that amendment affords no protection to a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. No warrant to 'search and seize' is required in such circumstances, nor is it when the Government sends to defendant's home a secret

> agent who conceals his identity and makes a purchase of narcotics from the accused or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence.

*Id.* at 749 (internal citations omitted).

In *Georgia v. Randolph*, 547 U.S. 103, 122-23 (2006), the Supreme Court held that police could not legally search a residence if one occupant, present at the residence, refused consent to search even though another co-occupant had given consent to search. *See id* ("This case invites a straightforward application of the rule that a physically present inhabitant's express refusal of consent to a police search is dispositive as to him regardless of the consent of a fellow occupant.") The defendant argues that because he did not give consent to have his conversation with the CI on June 26, 2008 recorded or transmitted to police, then *Georgia v. Randolph* requires suppression of any evidence of said conversation which was obtained by an electronic recording or transmittal. As the defendant noted in his supplemental brief, Det. Browne did not ask defendant for permission to record and transmit his conversation with the CI because Det. Browne did not think the defendant would have allowed that to occur if he had known about it. Defendant's argument, in essence, is that he has a constitutional right to know if someone he has invited into his car to purchase drugs is working undercover. I have found no such case. To the contrary, the Supreme Court has specifically held the use of undercover agents is constitutionally permissible. *See Lewis v. United States*, 385 U.S. 206 (1966) (holding there was no constitutional violation where the petitioner invited an undercover agent to his home for the specific purpose of executing a felonious sale of narcotics); *see also United States v. Baldwin*, 621 F.2d 251 (6th Cir. 1980) ( "[A police] agent may legitimately gain entry into a house by misrepresenting his identity. The fact that [the defendant] would not knowingly have invited a police agent to share his house does not render [the undercover agent's] presence there illegal.)

8

*Id.* at 252-53. Further, *Randolph* applies to situations where police seek to search a premises without a warrant and one occupant refuses consent while another grants it. The issue in *Randolph* was whether the police were permitted access to the premises to search. In the instant case, the premises (the Impala) belonged to defendant, and he voluntarily allowed the CI into his vehicle. At that point, the defendant had no constitutional right to keep his conversation between the CI and himself confidential if the CI chose to reveal the conversations, electronically or by other means, to the police. *United States v. White*, 401 U.S. 745 (1971).

That police may electronically record, without a warrant, conversations between a person who is knowingly cooperating with police and another who knows nothing about the recording is codified in 18 U.S.C. § 2511(2)(c) which states, "[i]t shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Such recordings, where only one party to the conversation knows about and consents to the recording, are often referred to as "consensual recordings," and, as previously discussed, such recordings are generally admissible in evidence even though they were obtained without a warrant. *See e.g., United States v. Yang*, 281 F.3d 534, 548 (6th Cir. 2002) (FBI was not required to obtain a warrant to videotape a meeting between the defendant and a confidential informant where the confidential informant consented to the videotaping and the defendant voluntarily came to the meeting with the confidential informant); *United States v. Peete*, 919 F.2d 1168, 1177 (6th Cir. 1990) (a police recording of defendant's conversation with a confidential informant was lawful despite the lack of a search warrant where the confidential informant consented to the conversation being recorded.); *Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 276 n. 5 (6th Cir. 1988) ("neither the United States

9

Constitution nor any federal statute prohibits law enforcement officials from recording or listening to phone conversations so long as one of the parties to the conversation has consented.").

In the instant case, defendant Tate invited the CI into his vehicle where he sold crack cocaine to the CI and police recorded the conversation between Tate and the CI during the controlled buy with consent of the CI. Thus, no search warrant was required, and there was no violation of the Fourth Amendment.

### *The Defendant's Statements*

The defendant asserts his statements, "Who did me?" and "Who do you think did me?", made at the scene of his arrest should be suppressed because, at the time that he gave them, he was under arrest and he had not been given his Miranda warnings. Because Det. Browne could not remember whether another detective had given defendant his *Miranda* warnings, I conclude for purposes of this motion that no *Miranda* warnings had been given. Nevertheless, the undersigned concludes this portion of the defendant's motion is also without merit.

Failure by the police to provide a person who is in custody with *Miranda* warnings before interrogating him will result in the suppression of any statements made in response to that police interrogation. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004); *Chavez v. Martinez*, 538 U.S. 760, 790 (2003). The government concedes that defendant was in custody at the time he made the statements at issue, but the government argues that the statements were not made in response to any form of police interrogation and therefore need not be suppressed.

*Miranda* warnings are not required for statements made by a suspect in police custody if the statements are made voluntarily and not in response to any form of police interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *Fleming v. Metrish*, 556 F.3d 520, 526 (6th

10

Cir. 2006). "Interrogation" is defined as "express questioning or its functional equivalent." *Innis*, 446 U.S. at 300; *see also Dave v. Mitchell*, 547 F.3d 297, 305 (6th Cir. 2008). The functional equivalent of interrogation consists of "words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301; *see also Fleming,* 556 F.3d at 526-27; *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993).

The defendant's statements to the effect of "Who did me?" made at the scene of his arrest were not elicited by any form of police interrogation. The statements were voluntarily made, and thus, as to those statements, *Miranda* warnings were not required. Thus suppression is not required either.

### *Motion to Dismiss*

The single count indictment against the defendant for distributing crack cocaine is based on the controlled buy. Defendant's motion to dismiss is predicated on the assumption that he will prevail on his motion to suppress. Because his motion to suppress evidence lacks merit, it is also RECOMMENDED that his motion to dismiss be DENIED.

11

IV. Conclusion

For the reasons stated herein, the undersigned Magistrate Judge RECOMMENDS defendant's Motion to Suppress evidence and to Dismiss [Doc. 37] be DENIED.[1]

ENTER:

Dated: October 7, 2009          s/William B. Mitchell Carter
                                UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

12