UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RAYMOND TATE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.: 1:08-CR-118-HSM-WBC-1 |
| | ) | 1:13-CV-36 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Raymond Tate ("Petitioner"). The government has filed its response to the motion, and Petitioner has filed three motions to amend [Docs. 205, 218, and 230], a motion for leave to conduct discovery [Doc. 231], a motion for evidentiary hearing [Doc. 232], and a motion for status hearing [Doc. 233].

Petitioner has failed to demonstrate he is entitled to relief under § 2255. Petitioner's pending motion to amend his § 2255 motion [Doc. 230[1]] will be **GRANTED**. 28 U.S.C. § 2255(f). For the reasons set forth below, Petitioner's motion to vacate, set aside or correct sentence [Doc. 203] will be **DENIED**.

Petitioner's motion for leave to conduct discovery [Doc. 231] and motion for status hearing [Doc. 233] will be **DENIED as moot** in light of the Court's denial of the § 2255 motion. As Petitioner has concluded his direct appeal of the judgment and likewise filed the instant motion to vacate under § 2255, his motion for copies for his appeal will also be **DENIED as moot** [Doc. 195].

---

[1] All citations to the record refer to the docket sheet in Criminal Action No. 1:08-CR-118.

## I.      Standard of Review

This Court must vacate and set aside Petitioner's conviction upon finding "there has been such a denial or infringement of the constitutional rights of the [Petitioner] as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine whether an evidentiary hearing is required after a review of the answer and the records of the case. If the motion to vacate, the answer, and the records of the case conclusively show that Petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). As the motion to vacate, the answer, and the records of the case conclusively show that Petitioner is not entitled to relief under § 2255, the Court will not hold an evidentiary hearing in this case and Petitioner's motion for an evidentiary hearing [Doc. 232] will be **DENIED**.

## II.      Factual Background

On November 12, 2008, the United States filed an initial indictment charging Petitioner with one count of "knowingly, intentionally, and without authority distribut[ing] fifty (50) grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"), a Schedule II controlled substance, in the Eastern District of Tennessee in violation of" 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) [Doc. 1]. Petitioner was arrested on January 14, 2009, and arraigned

2

on January 20, 2009 [Doc. 3]. On the same date, Federal Public Defenders Mary Ellen Coleman and William Rieder were appointed to represent Petitioner [Docs. 2 and 4].

On February 26, 2009, Petitioner filed a "motion regarding insufficient assistance of counsel" in which he asserted that although he and counsel had arranged various meetings, counsel had not met with him [Doc. 12]. At the first hearing on the motion, Petitioner's appointed counsel indicated that all communication issues regarding meetings had been resolved, but that she and Petitioner had an ongoing difference of opinion as to filing a motion to suppress [Doc. 17]. Accordingly, the magistrate judge set a second hearing to allow Petitioner and his counsel to further discuss the issue [Doc. 75].

At the second hearing, Petitioner and counsel explained that Petitioner was insisting that counsel file a motion to suppress the recording of the controlled buy which had resulted in the cocaine distribution against Petitioner based on the assertion that the recording violated the Fourth Amendment, and that counsel refused to do so because the confidential informant who had participated in the controlled buy had consented to the recording and there was no non-frivolous basis for such a motion [Doc. 85 p. 2–7]. The magistrate judge informed Petitioner that no legal basis existed for such a motion and that no attorney could therefore ethically file such a motion, and extensively discussed the applicable law with Petitioner [*Id.* at 5–17]. The magistrate judge ultimately denied Petitioner's motion [Doc. 17].

Undeterred by the magistrate judge's denial of his motion seeking new counsel and despite his representation by counsel, Petitioner subsequently filed a pro se motion to suppress the recording of the controlled buy of drugs underlying the charge against him which asserted that the recording was a "search" that violated the Fourth Amendment, as well as a later motion to amend this motion [Docs. 18 and 21]. Petitioner also filed another motion to re-appoint

3

counsel based upon his disagreement with his attorney over the motion to suppress [Doc. 19]. In this motion, Petitioner stated that although his attorney had shown him the case law he had requested on the issue and informed him that the motion to suppress would be frivolous, he nonetheless believed he had grounds to file the motion, and further stated that he felt that counsel was focused more on having Petitioner cooperate with the government than his defense [*Id.*]. At a hearing on this motion, the magistrate judge again informed Petitioner that there was no basis for filing a motion to suppress the recording of the controlled buy and again explained the applicable law [Doc. 86]. The magistrate judge further stated that he did not believe that Petitioner had actually presented evidence of a conflict with his counsel and explained to Petitioner that there are limits to an attorney's duty to represent his clients, but nonetheless relieved Petitioner's Federal Public Defenders and appointed attorney John Brooks to represent Petitioner [Doc. 23, 86].

On May 4, 2009, Petitioner filed another motion to re-appoint counsel, in which he asserted that his Mr. Brooks had refused to file a motion challenging the Court's jurisdiction, among other issues [Doc. 30]. The magistrate judge held two hearings on the motion [Docs. 87 and 199]. During the first hearing, Mr. Brooks indicated that Petitioner wanted him to file a motion challenging the jurisdiction of the Court even though there was no basis for such a motion, and the magistrate judge told Petitioner that there was no basis for such a motion [Doc. 87 at 3–11]. Petitioner also again indicated that he wanted counsel to file a motion to suppress the recording of the controlled buy on constitutional grounds, and the magistrate judge again explained that there was no basis for such a motion and the applicable law [*Id.* at 11–20, 24–29].

Petitioner was then advised of his right to proceed pro se, and Petitioner indicated that he wanted to proceed pro se with standby counsel [*Id.* at 17–20, 23–24]. The government also

4

advised the magistrate judge and Petitioner that the filing of a superseding indictment was imminent, and that such an indictment would include charges relating to Petitioner shooting the criminal informant in the face in an attempt to kill her [*Id.* at 21–22]. The magistrate judge took Petitioner's request for appointment of new counsel under advisement [*Id.* at 29].

At the second hearing on the motion to reappoint counsel, the Court reiterated the disadvantages of pro se representation, the government went over the charges that were currently pending and likely to be filed soon, Petitioner was informed of the potential sentence, and Petitioner confirmed his desire to proceed pro se with standby counsel [Docs. 34 and 199]. Accordingly, the Court allowed Petitioner to proceed pro se and appointed attorney Lee Ortwein as standby counsel [Docs. 34 and 199].

On June 23, 2009, a superseding indictment was filed which again charged Petitioner with Count One of the original indictment [Doc. 46 p.1]. The superseding indictment also added three additional charges arising out of allegations that, in the Eastern District of Tennessee, Petitioner had attempted to kill Shanika Owens ("Owens"), the confidential informant who participated in the controlled buy, by shooting her in the face [Doc. 46].[2]

Before and after being granted leave to proceed pro se, Petitioner filed numerous pretrial motions making various arguments, including challenging the Court's jurisdiction [Doc. 64],

---

[2] Specifically, Count Two charged Petitioner with attempting to kill Shanika Owens by shooting her in the face to prevent her from communicating with law enforcement and a judge of the United States regarding the facts surrounding Count One, in violation of 18 U.S.C. § 1512(a)(1)(C) and 2 [*Id.* at 1]. Count Three charged Petitioner with attempting to kill Shanika Owens by shooting her in the face to prevent her testimony at an official proceeding, namely Petitioner's trial for Count One, in violation of 18 U.S.C. § 1512(a)(1)(A) and 2 [*Id.* at 2]. Count Four charged him knowingly using, carrying, and discharging a firearm, aided and abetted by another, during and in relation to a crime of violence for which he may be prosecuted in the United States as set forth in Counts Two and Three in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 2 [*Id.*].

questioning whether the government would have sufficient proof to convict him [Doc. 94], challenging the sufficiency of the indictment [Doc. 95], seeking to suppress the recording of the controlled buy [Doc. 100], seeking to retest the drugs [Doc. 110], and requesting substitute counsel [Doc. 118]. While the Court deferred ruling on the motion to retest the drugs until after trial, and ultimately granted it [Doc. 162], the Court denied all of Petitioner's other pretrial motions [Doc. 192 p. 5–16].

At the pretrial conference, the Court denied Petitioner's motion to substitute counsel and specifically stated that standby counsel was for the benefit of the Court, as Petitioner had waived his right to counsel [Doc. 192 p. 2–3]. Petitioner then requested representation by counsel at trial, and the Court noted that it was eight days before trial and stated that it would not appoint a new lawyer, but would allow Petitioner to discuss the matter with standby counsel [*Id.* at 16–17]. After this discussion, Petitioner stated that standby counsel had indicated that he did not have sufficient time to prepare for trial and Petitioner renewed his request for new counsel [*Id.* at 22–23]. The Court again noted that trial was in eight days and that Petitioner had elected to represent himself, and proceeded to set forth the process of jury selection [*Id.* at 23]

Prior to *voir dire* on the date of Petitioner's trial, the Court confirmed that Petitioner had waived his right to counsel and agreed to represent himself at trial because his most recent request for new counsel and/or trial counsel had been untimely and had not given his standby attorney time to prepare for trial, and Petitioner wanted a speedy trial [Doc. 200 p. 9–14]. Petitioner confirmed that it was "late in the game," stated that he had wanted to represent himself to get appealable issues on the record through his filed motions, and asked the Court to continue the trial date to allow him to talk to his standby counsel about coming up with a defense strategy [*Id.* at 13–25]. The Court ultimately found that Petitioner had dismissed three attorneys, that

6

Petitioner's standby counsel was appointed for the sole purpose of standing in at trial if the Court determined that Petitioner had violated any orders or rules of the Court, that Petitioner had "permanently and irrevocably forfeited his right to assistance of counsel," that Petitioner's request to continue the trial was solely for purposes of delay, and that Petitioner's request for a continuance represented an effort to obstruct justice [*Id.* at 30–31].

The case proceeded to trial on November 17 and 18, 2009. The evidence at trial was that on July 26, 2008, police officers with the Hamilton County Sheriff's Department set up a controlled buy between Petitioner and Owens, a confidential informant [Doc. 193 p. 14–15]. Prior to the controlled buy, the officers searched Owens, her vehicle, and her purse for contraband [*Id.* at 15].[3] After searching Owens for contraband, officers provided her with $2,000 in recorded government funds and a recording device, which they placed in her purse [*Id.*]. Petitioner arrived at the meeting place, parking close enough to one officer that the officer was worried that Petitioner would see him [*Id.* at 16]. Owens then got in the car with Petitioner and had a conversation, at least a portion of which was audibly recorded by the recording device in Owens' purse [*Id.* at 16–17].[4] Specifically, the recording device recorded Owens asking what

_____

[3] The male officers did not search Owens' breast or genital areas [Doc. 193 p. 36–37].

[4] In a complaint in a civil lawsuit filed by Petitioner, which was admitted as an exhibit at trial, Petitioner specifically admitted to engaging in a conversation with Owens which "took place in [Petitioner's] vehicle while he and [Owens] were the only two persons in the vehicle with the doors closed and windows rolled up" and while [] Owens had a recording device [Doc. 193 p. 29–30]. Petitioner further stated in his civil rights complaint that "[b]oth before and during the [time that the] conversation/effects and the search took place [Petitioner] was physical present and readily available . . ." [*Id.* at 30].

When the government sought to introduce this exhibit at trial, Petitioner questioned its relevance and denied that it was an admission because he had qualified the first sentence of the portion of the pleading read at trial, which concerned whether officers had obtained consent from Owens to record the controlled buy, with the word "allegedly" [Doc. 193 p. 28–31]. Petitioner

7

Petitioner was going to charge, Petitioner asking "for two ounces?," Owens saying "yeah," and Petitioner saying "eighteen." [*Id.* at 25]. Officers did not visually observe Petitioner passing any drugs to Owens or Owens passing any money to Petitioner [*Id.* at 38]. After this interaction, Owens met with officers at a location where officers again searched Owens and her vehicle [*Id.* at 17]. Owens provided police with $200 and officers retrieved both the recording device and the crack cocaine Owens purchased from Petitioner [*Id.*].

An officer then field-tested the crack cocaine before submitting it to the Tennessee Bureau of Investigation ["TBI"] [*Id.* at 17]. The officer's field test reported that the drugs weighed approximately 60 grams, and the TBI found that the net weight of the drugs Owens delivered to officers was 55.6 grams [*Id.* at 50–58]. Many agencies weigh drugs together with the Ziploc bag, which results in a gross weight, before sending the drugs to the TBI [*Id.* at 58]. The TBI does not include the Ziploc bag when weighing drugs, resulting in a net weight [*Id.*]. When the drugs were weighed by the TBI, the drugs were at least mostly dry, but may have had some moisture content [*Id.* at 55]. Because the drugs were in a bag, no moisture change in the

---

did not qualify any of the other statements in the portion of the pleading read at trial relating to him being in the car and engaging with Owens while she had a recording device in her purse as "alleged," however, and the context of these statements established that Petitioner was specifically admitting to his presence and engagement with Owens during the controlled buy in an attempt to show that officers should have sought permission to record the controlled buy from Petitioner [*Id.*].

Also on August 27, 2009, at the first hearing on his motion to appoint new counsel, Petitioner stated under oath that he did not "know who the [confidential informant] was in the case until [he] listened to the recording" and that he was in the confines of the car with the confidential informant when the conversation he wished to suppress took place [Doc. 87 p. 22, 27–28].

drugs should have occurred between the time the officer weighed the drugs and the time that the TBI weighed the drugs and the weight of the drugs should not have fluctuated [*Id.* at 55–56].

Officers did not arrest Petitioner right away, but rather waited several weeks to arrest him, as Owens was cooperating with them in other investigations and they were not ready to disclose her cooperation with police [*Id.* at 17–18, 35–26].  Officers also had difficulty finding Petitioner to arrest him [*Id.* at 46].  When Petitioner was arrested, Petitioner asked several people in the crowd around him "Who did me? Who did me?" in an attempt to find out who had cooperated with police [*Id.* at 26].  Petitioner was then put in state custody and charged with selling and delivering cocaine in violation of state law, but was notified of a strong possibility that federal authorities would charge him with the crime [*Id.* at 26–27].[5]  Petitioner made bond and was released from state custody [*Id.* at 26].

In December 2008, Petitioner approached Roy Petty ("Petty"), an individual he knew from his home town [Doc. 194 p. 4].  Petitioner asked Petty if he had a gun, but did not tell Petty why he wanted the gun [*Id.* at 4–5].  Nevertheless, Petty provided Petitioner with what Petty believed was a .25 caliber handgun with a clip in it [*Id.* at 5, 6–7].  During this visit, Petitioner also asked Petty where Owens lived, but Petty was unsure, and Petitioner did not make any threats of violence against Owens [*Id.* at 5–7].  Petitioner told Petty not to tell anyone that Petitioner had come by [*Id.* at 6].  After this visit, Petty heard that Owens was shot [*Id.* at 4–5].

Owens agreed to be a confidential informant for the police to help reduce the sentence of a friend of hers who was sentenced and in federal prison [*Id.* at 11].  As part of the deal to cooperate, Owens agreed that she would tell the truth and cooperate with law enforcement, and

---

[5] No recorded government funds were ever recovered from Petitioner [Doc. 193 p. 47–48].

this was part of the reason Owens testified against Petitioner [*Id.* at 11–12]. Owens also testified at trial to ensure that Petitioner had to pay for what he did to her [*Id.* at 13].[6]

Owens did not have any contraband on her before she participated in the controlled buy with Petitioner on July 26, 2008, used the $2,000 given to her by officers to buy crack from Petitioner, and did not hear directly from Petitioner after the controlled buy [*Id.* at 15–18]. Soon after midnight on January 6, 2009, Owens was coming home from work with her four year old daughter and got out of her car to open a gate [*Id.* at 18–19]. Two men approached her, one of whom had a mask over his face and one of whom had a mask on his head that he subsequently pulled down over his face [*Id.* at 18–19]. Owens identified Petitioner as the man who first had a mask on his head before pulling it down [*Id.* at 18]. The unidentified man punched Owens in the face, and the man Owens identified as Petitioner walked up to Owens, said "yeah, uh-huh," and shot Owens in her face [*Id.* at 18–21].

After being shot, Owens drove herself and her daughter to a fire station, where an ambulance picked her up and took her to the hospital [*Id.* at 21–22]. At the hospital, Owens told her mother that she saw Petitioner's face at the time of the shooting [*Id.* at 26]. When Owens spoke with a police detective at the hospital that same night, however, she told him that she thought that Petitioner shot her, but that she did not see Petitioner's face [*Id.* at 23–24 and 52]. Owens also gave a recorded statement to a police detective a couple days after the shooting in which she again did not state that she saw Petitioner's face, but stated that she heard his voice,

---

[6] At trial, both parties introduced evidence of past events which created some credibility issues for Owen. Specifically, Owens admitted that in 1995, when she was 18 or 19, she and some friends called the police to tell them that the school auditorium was on fire when it was not, and that she got in trouble for this false police report [Doc. 194 p. 14–15]. Owens also admitted that in the same year, she pled guilty to a charge of filing a false statement arising out of an incident wherein she had been drinking with friends and later filed a report alleging that she had been raped, which Owens' parents persuaded her to withdraw due to the drinking [*Id.* at 35–39].

10

knew his voice, and saw his hair [*Id.* at 24–25]. After Petitioner was arrested, approximately six or seven days after the shooting, Owens called the detective and told him that she had seen Petitioner's face before he pulled down his mask on the night of the shooting [*Id.* at 25].

Owens did not tell detectives that she had seen Petitioner's face at the time of the shooting until after Petitioner was in custody because (1) she thought that Petitioner may not have known that she saw his face at the shooting; (2) prior to the shooting, Petitioner had been asking where Owens, her brother, and her mom lived; (3) as Owens believed that Petitioner had run from the drug charge against him, Owens feared that if Petitioner knew that she had seen him before he shot her in the face, Petitioner would run from police and she and her family would always be in danger; and (4) she believed that police would not publish her suspicion that Petitioner was the shooter, but may publish a conclusive identification of the shooter [*Id.* at 25–26, 46–47]. Owens had detectives hide her until Petitioner was found [*Id.* at 49].

Petitioner was arrested after driving past an officer while wearing a hoodie and weaving through traffic [*Id.* at 61–62]. When the officer pulled out to pull Petitioner over, Petitioner accelerated to actively flee and the officer lost him in traffic [*Id.* at 62]. When the officer eventually located Petitioner and confronted him about why he was attempting to flee, Petitioner first alleged that he did not have a driver's license, but the officer found Petitioner's license [*Id.* at 63–64]. Petitioner next told the officer that he did not have an insurance card, but the officer then found that Petitioner did have an insurance card that appeared valid [*Id.* at 63]. The officer was suspicious, ran a check on Petitioner, and learned that Petitioner was wanted by the United States Marshals Service [*Id.*].

11

On November 18, 2009, the jury found Petitioner guilty on all Counts of the superseding indictment, specifically finding that Petitioner was guilty of distributing fifty grams or more of a mixture and substance containing cocaine base as alleged in Count One [Doc. 133].

Petitioner filed a number of post-trial motions for relief and two notices of ineffective assistance of counsel, most of which the Court found were redundant and/or frivolous, and all of which the Court denied [Docs. 139, 140, 141, 167, 169, 170, 171, 173, 175, 181, 182, 190, and 191]. The Court specifically denied Petitioner's request that the Court find that standby counsel was ineffective for failing to step in for trial when Petitioner requested trial counsel eight days before trial [Doc. 190 p. 58–61].

Also after trial, the Court rejected the magistrate judge's report and recommendation recommending that the Court deny Petitioner's motion to retest the drugs and granted Petitioner's motion to retest the drugs [Doc. 162]. When the drugs were retested, the lab report stated that the drugs weighed thirty-seven grams [Docs. 167-1 and Doc. 190 p. 6–7]. Petitioner, however, never sought any relief from the Court based on this post-trial weight of the drugs [Docs. 190 and 191], and specifically rejected, in writing, standby counsel's strongly-worded written advice that Petitioner should seek relief from the Court on this ground [Doc. 167-3]. Further, at the pre-sentencing hearing wherein the Court provided Petitioner with a copy of the post-trial lab report showing that the drugs had been reweighed at thirty-seven grams and attempted to address this report, Petitioner appeared indifferent to the report and instead chose to again argue that standby counsel had been ineffective and that the Court did not have jurisdiction over the case, resulting in the Court ultimately excusing a witness from the lab who was there to testify about the report without the witness testifying [Doc. 190 p. 6–70, 25–26].

12

A probation officer prepared a presentence investigation report ("PSR") for the Court regarding Petitioner. As Petitioner had been convicted of at least two prior felony convictions of a controlled substance offense, the offense at issue involved a crime of violence and a controlled substance offense, and Petitioner was eighteen or older at the time of the commission of the offense, the PSR stated that Petitioner was a career offender within the meaning of §4B1.1 of the United State Sentencing Guidelines ("USSG") [PSR ¶ 37]. Further, as one of Petitioner's convictions was for a violation of 18 U.S.C. § 924(c), the PSR found that the greater range resulting under USSG §4B1.1(c) should be applied, and that, pursuant to USSG § 4B1.1(b)(A), Petitioner's total offense level was therefore 37 [PSR ¶¶ 37, 38]. Because Petitioner was a career offender, his criminal history category was enhanced to VI under USSG §4B1.1(b) [PSR ¶ 50].

Under 21 U.S.C. § 841(b)(1)(A) (eff. date April 15, 2009 to August 2, 2010), the minimum term of imprisonment for Count One was life [PSR ¶ 62]. Under 21 U.S.C. § 1512, the maximum term of imprisonment for Counts Two and Three was thirty years [PSR ¶ 64]. Under 18 U.S.C. § 924(c)(1)(A)(iii), the minimum term of imprisonment for Count Four was ten years [PSR ¶ 65].

Based on the total offense level of 37 and the criminal history level of VI, the guidelines range was 360 months' imprisonment to life imprisonment [PSR ¶ 66]. With the mandatory consecutive term of ten years for Count Four, the guidelines range would have been 480 months' imprisonment to life imprisonment [*Id.*]. Due to the statutorily enhanced penalties for Count One, however, the effective guidelines range was life imprisonment plus ten years [*Id.*].

Petitioner filed objections to the PSR in which Petitioner objected to the fact that the PSR did not list all of the post-trial motions Petitioner had filed, objected to the PSR's statement of offense conduct relating to the exchange between the defendant and the confidential informant,

13

stated that there was no evidence of defendant possessing a kilogram of cocaine, and denied that the evidence supported his involvement in the shooting, all of which the Court overruled [Addendum to PSR; Doc. 191 p. 56–57].

Before and at sentencing, Petitioner again asserted that standby counsel had been ineffective due to his refusal to step in at trial [Docs. 171 and 191 p. 11]. Standby counsel, however, testified at sentencing that he offered to step in as counsel at trial but explained to Petitioner that if he did so, then he would make all of the strategic decisions, and Petitioner advised that he could not do that [Doc. 191 p. 13]. The Court found that Petitioner's assertion that standby counsel was ineffective was "as ridiculous and frivolous as everything else [Petitioner had] filed in this case" and denied any such motion for relief [Doc. 191 p. 30–34].

At Petitioner's sentencing on June 4, 2010, no party objected to the PSR's calculation of the statutory minimum sentence of life imprisonment plus one hundred and twenty months, and no party addressed the post-trial weight of the drugs [Doc. 191]. Accordingly, after considering the nature and circumstances of the offense, the history and characteristics of the defendant, the guidelines range, as well as all other 18 U.S.C. § 3553(a) factors, the Court sentenced Petitioner to a term of life plus 120 months [*Id.* at 67]. The sentence consists of a term of life on Count 1 of the superseding indictment, terms of 360 months' imprisonment on Counts 2 and 3 of the superseding indictment to run concurrently to Count 1, and a term of 120 months' imprisonment on Count 4, to run consecutively to Counts 1, 2, and 3, as well as supervised release for a term of 10 years [*Id.*; Doc. 186].

Also on June 4, 2010, Petitioner filed a notice of appeal of the Court's judgment [Doc. 184]. Petitioner was represented by counsel for his appeal, and his request to file a supplemental brief was denied by the Sixth Circuit Court of Appeals [Doc. 201 p. 1]. The brief appellate

14

counsel filed on behalf of Petitioner included arguments for which Petitioner's appellate counsel found legal support, as well as legal arguments set forth by Petitioner for which appellate counsel did not find legal support [Sixth Circuit Case No. 10-5694, Doc. 76, Brief of Appellant]. In the brief filed with the Sixth Circuit, appellate counsel set forth in great detail the relevant factual and procedural background of the underlying criminal proceedings, including all of the trial testimony and the relevant motions Petitioner filed and the Courts rulings thereon [*Id.*]. Appellate counsel also forth the following arguments in the brief:

(1) Although Petitioner had validly waived the right to counsel, the Court violated Petitioner's Sixth Amendment rights by denying his request to be appointed counsel for trial;

(2) The Court erred by sentencing Petitioner to a term of life imprisonment for his drug offense under 21 U.S.C. § 841(b)(1)(A)(iii), which requires possession of at least fifty grams, because of the post-conviction test which indicated that the drugs weighed less than fifty grams;

(3) Petitioner's argument that the Court lacked jurisdiction over his case because the Controlled Substances Act can only be constitutionally applied on property owned by the federal government;

(4) Petitioner's argument that the recording of the drug transaction should have been suppressed;

(5) Petitioner's argument that the superseding indictment was deficient; and

(6) Petitioner's argument that the evidence at trial was insufficient to support a conviction based on Owens' lack of credibility, the fact that the investigating detective did not witness the alleged drug transaction, Owens' conflicting testimony regarding identifying the shooter, Owens' mother's bias, and the fact that Owens was shot with a different caliber gun than the one Petitioner received from Petty.

[*Id.*; *see also* Sixth Circuit Case No. 10-5694, Doc. 96, Appellant's Reply Brief]. The Sixth Circuit affirmed the Court's judgment [Doc. 201 p. 5].

Petitioner filed a timely motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 [Doc. 203], Respondent filed a response [Doc. 222], and Petitioner filed a reply [Doc. 229]. Petitioner also filed three motions to amend [Docs. 205, 218, 230], as well as various other motions. In his § 2255 motion and the related filings, Petitioner alleges appellate counsel failed to raise the following arguments and/or raised them in a manner which was ineffective:

(1)    Evidentiary objections to evidence introduced at trial, specifically:

(a) Petitioner's civil case complaint was impermissibly admitted into evidence despite being hearsay and more prejudicial than probative;

(b) Roy Petty's testimony that he heard that Shanika Owens had been shot was inadmissible hearsay and Roy Petty's testimony as a whole was more prejudicial than probative and/or irrelevant;

(c) Shanika Owens' testimony was irrelevant, parts of it were more prejudicial than probative, parts of it were hearsay, parts of it were unreliable and falsified, and part of it contained character evidence;

(d) The testimony of Owens' mother, Willie Powell, regarding what Shanika Owens told her about the shooting was hearsay and more prejudicial than probative; and

(e) Officer Danny Turner's testimony was more prejudicial than probative and irrelevant;

(2)    Attorney Lee Ortwein's testimony at a post-trial hearing was more prejudicial than probative, due to Petitioner's assertion that it was falsified;[7]

---

[7] Petitioner numbered his § 2255 arguments and grouped his objection to Ortwein's testimony with his evidentiary objections to trial testimony, but the Court views Ortwein's sentencing testimony as a separate issue. As Petitioner appears to have skipped the number two in numbering his § 2255 arguments, however, the Court's numbering and Petitioner's numbering match up as to all other arguments.

16

(3)     The recording of the controlled buy violated the Fourth Amendment and should have been suppressed because of law enforcement's removal of Petitioner from the colloquy;

(4)     The Court and/or the United States lacked jurisdiction to prosecute Petitioner because subject matter jurisdiction is not enough and the "locus in quo" of the crimes was not on federal property;

(5)     Shanika Owens' testimony was falsified evidence entered by the prosecution in violation of Petitioner's rights;

(6)     It was plain error for the Court not to retest the drugs before trial and to defer the ruling on Petitioner's motion to retest the drugs until after trial;

(7)     The different weights of the drugs established that the drugs had been tampered with, altered, and/or had not been properly preserved;

(8)     The denial of counsel to Petitioner before trial violated the Sixth Amendment; and

(9)     The indictment was defective due to the fact that it did not set forth any basis for federal jurisdiction.

In its response to Petitioner's § 2255 motion, Respondent argues that Petitioner has not established ineffective assistance of counsel as to the claims not raised on appeal and that Petitioner has procedurally defaulted the claims not raised on appeal.[8]

## III.     Analysis

Petitioner alleges that he received ineffective assistance of counsel on appeal due to appellate counsel's failure to raise certain issues and/or appellate counsel raising issues in a

---

[8] While Petitioner sometimes addresses his claims in a manner which suggests he brings them on their merits, it appears to the Court that all of Petitioner's claims are based out of the assertion that appellate counsel was ineffective for not raising certain claims on appeal and/or arguing claims in a manner which was ineffective [Doc. 203 p. 6–7 and Doc. 218 p. 2–3, 8–9]. Accordingly, the Court will address them as such.

manner which was ineffective. The Sixth Amendment provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

18

Moreover, an indigent defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has further pointed out "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* In order to show that appellate counsel was incompetent, a petitioner must show that the issue counsel did not present on appeal was "'clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. "[C]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *United States v. Busch*, 411 Fed. App'x 872, 877 (6th Cir. 2011).

The Supreme Court has emphasized that a claimant must establish both prongs to meet his burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

19

*Strickland*, 466 U.S. at 697.

Petitioner's appellate counsel filed a detailed, well-researched, and well-argued brief which included all of the relevant background and procedural facts of Petitioner's underlying criminal proceedings. Appellate counsel's brief also included two arguments for which he found legal support, as well as several arguments for which appellate counsel did not find legal support, but Petitioner wished to include. The Sixth Circuit addressed the merits of all of the arguments in the appellate brief and affirmed the judgment of the Court in all respects.

For the reasons set forth below, the Court finds that Petitioner has not established that appellate counsel was deficient in the manner in which he presented arguments on appeal, nor has he established that appellate counsel was deficient for not asserting the additional arguments Petitioner sets forth in his § 2255 motion. Petitioner likewise not established that he was prejudiced by the manner in which appellate counsel pursued his appeal. Accordingly, Petitioner is not entitled to relief under § 2255 for any of his claims of ineffective assistance of counsel.

1. Evidentiary Objections to Testimony at Trial

Petitioner sets forth various evidentiary objections to testimony at trial which he asserts counsel should have raised on appeal. Petitioner has not established that appellate counsel was deficient in not raising these evidentiary objections on appeal, nor has he established any prejudice from appellate counsel's decision not to raise the objections. Petitioner is therefore not entitled to relief on this claim of ineffective assistance of counsel.

First, appellate counsel set forth all relevant trial testimony in the appellate brief. As such, appellate counsel was clearly aware of the trial testimony and any potential evidentiary objections thereto. Most, if not all, of the evidentiary objections Petitioner sets forth have no

20

merit and represent a fundamental lack of understanding of the correct application of the Federal Rules of Evidence. For example, Petitioner objects to the testimony of Willie Powell, Owens' mother, that Owens told her that she had seen Petitioner's face on the night of the shooting because Petitioner asserts that it was inadmissible hearsay. This evidence is not hearsay as it was not offered for the purpose of proving that Petitioner shot Owens, however. Fed. R. Evid. 801(c). Rather, this evidence was offered to show why Powell had taken certain actions, as well as to support Owens' testimony that she had actually seen Petitioner's face on the night that he shot her despite her inconsistent statements to the police regarding this fact. Appellate counsel cannot be faulted for not raising any objections which have no merit, including this one.

Further, to the extent that the unpreserved evidentiary objections have any arguable merit, appellate counsel was not unreasonable for determining that the issues appellate counsel raised in the brief were stronger legal arguments. Petitioner has not overcome the strong presumption that appellate counsel's professional decision not to argue these unpreserved evidentiary objections was good strategy for the appeal or established that this professional decision violated his constitutional right to counsel.

Petitioner further cannot establish any prejudice to him from appellate counsel's decision not to argue these unpreserved evidentiary objections on appeal, as this argument would not have changed the result of the appeal. As Petitioner did not raise the evidentiary objections at trial, the Sixth Circuit would have reviewed these unpreserved objections for "plain error." *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004). To establish plain error, Petitioner must establish that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings." *Id.* (internal quotation marks omitted). The Court has closely examined the

trial testimony and Petitioner's evidentiary objections thereto. The Court finds that none of the evidentiary objections were obvious or clear errors and that the admission of the evidence to which Petitioner now objects did not seriously affect the fairness, integrity, or public reputation of the underlying criminal proceedings. Rather, the Court finds that Petitioner is now objecting to highly probative evidence because it incriminated him and/or was prejudicial to him.

Accordingly, Petitioner has not established that appellate counsel was deficient for not arguing the evidentiary objections Petitioner sets forth in his § 2255 motion and Petitioner has not established that the result of his appeal would have been different if appellate counsel had made such arguments. Petitioner is therefore not entitled to relief under § 2255 on this claim of ineffective assistance of appellate counsel.

2. Ortwein Sentencing Testimony

Petitioner next argues that appellate counsel was ineffective for not asserting that standby counsel Lee Ortwein's testimony at sentencing was false and more prejudicial than probative, and therefore should have been excluded under Rule 403 of the Federal Rules of Evidence. Petitioner specifically argues that Ortwein's testimony at sentencing that Ortwein offered to step in as Petitioner's counsel at trial, but Petitioner declined this offer because it was conditioned on Ortwein making all strategic decisions, was false and more prejudicial than probative, as it conflicted with Petitioner's earlier statement to the Court that Ortwein could not step in because he did not have enough time to prepare. Petitioner argues that this testimony from Ortwein could have improperly influenced the Court to make an "irrational decision."

Appellate counsel set forth all of the facts relating to Ortwein's representation of Petitioner and the differing explanations for the fact that standby counsel did not step in as trial counsel in his appellate brief and reply brief. Accordingly, appellate counsel was clearly aware

of all credible legal arguments he could have made based on this issue and made a professional decision not to include this argument. Petitioner has not overcome the strong presumption that this professional decision was good strategy for the appeal or established that this professional decision violated his constitutional right to counsel.

Further, Petitioner cannot establish that he was prejudiced by appellate counsel's professional decision not to raise this issue, as any such claim would not have changed the result of the appeal. As Petitioner did not raise any objection to Ortwein's testimony at sentencing to the Court, the Sixth Circuit would have reviewed this unpreserved objection for "plain error." *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004), the standard for which the Court has set forth above. The Federal Rules of Evidence do not apply at sentencing. *United States v. Brika*, 487 F.3d 450, 457 (6th Cir. 2007). As such, Petitioner's argument that Ortwein's sentencing testimony should have been excluded under the Federal Rules of Evidence lacks merit and there was no error in the Court hearing this testimony. Moreover, the record establishes that the Court was well aware of the relevant history in this case relating to Petitioner's untimely request to be represented by counsel at trial, that the Court repeatedly recognized Mr. Ortwein's exceptional performance as standby counsel for Petitioner, and that the Court had no reason to question Mr. Ortwein's credibility.

Accordingly, Petitioner has not established that he is entitled to relief under § 2255 for this claim of ineffective assistance of appellate counsel.

3. Suppression of Recording of Controlled Buy

Petitioner further argues that appellate counsel erred by not arguing that the consensual recording of the controlled buy should have been suppressed under the Fourth Amendment because police intentionally did not seek Petitioner's consent to record the controlled buy.

23

Appellate counsel did, however, raise the issue of whether the recording of the controlled buy violated the Fourth Amendment in the appellate brief, and, as set forth above, Petitioner himself raised it in countless pre- and post-trial motions.

Petitioner attempts to distinguish his § 2255 suppression argument from that raised by appellate counsel by asserting that appellate counsel should have focused on the fact that officers intentionally did not seek Petitioner's permission to record the controlled buy, thereby removing Petitioner from the colloquy. While it is undisputed that officers could have, but did not, seek Petitioner's consent to record the controlled buy, this fact does not affect the substantive law applicable to this claim, as Owens consented to recording the controlled buy and Petitioner did not have a reasonable expectation of privacy regarding their conversation [Doc. 201 p. 3–4].

Accordingly, the suppression argument in Petitioner's § 2255 motion is substantively identical to the claim appellate counsel raised and the Sixth Circuit addressed on direct appeal. As such, Petitioner cannot establish that the manner in which appellate counsel raised this issue was deficient or prejudiced him, and Petitioner is not entitled to relief under § 2255 for this claim of ineffective assistance of counsel.

4. Jurisdiction

Petitioner also asserts that appellate counsel should have argued on appeal that the Court and the United States had no jurisdiction over his prosecution because the underlying offense did not occur on federally-owned property[9] and because of restraints on Congress's authority, including the requirement that the Commerce Clause not invade the domain of action reserved exclusively for the states and the Fifth Amendment [Doc. 203 p. 33].

---

[9] In Petitioner's words, the "locus in quo" of the offense was not federally owned property.

Appellate counsel did set forth Petitioner's argument that the Court lacked jurisdiction over Petitioner's prosecution because the underlying criminal act did not occur on federal property and the Controlled Substances Act ("CSA") cannot be constitutionally applied on land which is not federally owned due to limits on Congressional authority, however. The Sixth Circuit found this argument to be without merit because the CSA "is a constitutionally valid exercise of congressional power under the Commerce Clause" [Doc. 201 p. 3]. Petitioner has not established that the manner in which appellate counsel raised this issue was deficient.

To the extent that Petitioner's arguments in his § 2255 that the Court and/or the United States did not have jurisdiction over his prosecution are distinguishable from the argument appellate counsel raised on this issue in the appellate brief, they are without merit. The United States has jurisdiction to prosecute offenses committed against the laws of the United States, just as the federal courts have exclusive jurisdiction over offenses against the laws of the United States. *United States v. Hamilton*, 263 F.3d 645, 655 (6th Cir. 2001). Appellate counsel was not deficient, therefore, for not arguing that the Court and/or the United States lacked jurisdiction to prosecute him for violating the laws of the United States, and Petitioner cannot establish any prejudice from appellate counsel not raising the argument Petitioner has set forth, as any such argument would not have changed the result of his appeal.

Thus, for the reasons set forth above, Petitioner is not entitled to relief under § 2255 for this claim of ineffective assistance of appellate counsel.

5. Owens' Testimony

Petitioner next argues that appellate counsel should have asserted that Owens' testimony regarding her identification of him as her shooter was improperly admitted at trial, as the prosecution knew it was false. Petitioner cannot establish that counsel was deficient for not

25

raising this argument or that he was prejudiced by counsel's professional decision not to raise the argument, and this claim of ineffective assistance of counsel is therefore without merit.

First, appellate counsel set forth a thorough summary of the relevant factual and procedural background of the underlying criminal proceedings in the appellate brief, including all of Owens' trial testimony. Appellate counsel further pointed out Owens' inconsistent statements regarding her visual identification of Petitioner as the person who shot her. Thus, it is clear that, in his professional judgment, appellate counsel determined that any argument that Owens' testimony should not have been admitted by the Court was less strong than those arguments appellate counsel decided to include on appeal. The Court finds that this decision was not deficient, but rather professionally reasonable.

Petitioner further has not established any prejudice from appellate counsel's decision not to include this argument as he has not established that, had appellate counsel raised this argument, the result of his appeal would have been different regardless of the standard of review applied, as the claim is without merit. With regard to a prosecution's presentation of deceptive and perjured testimony, the Sixth Circuit has held as follows:

> The Supreme Court has long recognized that due process is denied where "[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured." *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Such conduct by the prosecution is "inconsistent with the rudimentary demands of justice." *Id.* The same holds true "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). As the Court explained in *United States v. Agurs,* 427 U.S. 97, 103–04, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), a false-testimony claim falls under the *Brady* disclosure doctrine. The contours of this claim were predominantly shaped by two Supreme Court

26

cases: *Napue v. Illinois,* 360 U.S. at 269–72, 79 S.Ct. 1173, and *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

This court has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989)). A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio,* 405 U.S. at 154, 92 S. Ct. 763 (alterations and internal quotation marks omitted) (quoting *Napue,* 360 U.S. at 271, 79 S. Ct. 1173).

*Brooks v. Tennessee*, 626 F.3d 878, 894–95 (6th Cir. 2010).

Petitioner's argument in his § 2255 motion is that, at trial, Owens "adopted" her conflicting pretrial statements regarding her visual identification of Petitioner as her shooter, and that these statements should not have been admitted, as the conflicts therein meant that they were untrue. Contrary to Petitioner's assertion, Owens consistently testified at trial that she saw Petitioner's face before he shot her and Owens did not "adopt" any prior statement that she did not see Petitioner's face before he shot her.

27

Rather, at trial, Owens admitted to her prior inconsistent statements regarding her visual identification of Petitioner and credibly explained the reasons that she had not immediately informed police that she had visually identified Petitioner as her shooter. The Sixth Circuit clearly agreed with this interpretation of Owens' testimony, as it specifically held that Owens' inconsistent statements "raise the type of credibility issues that are properly resolved by the jury" [Doc. 201 p. 4]. As such, it is clear that Owens' testimony relating to former inconsistent statements was not a *Brady–Napue–Giglio* violation and this argument is without merit.

Accordingly, appellate counsel was not deficient in not making this argument, Petitioner cannot establish prejudice, as he cannot show that the result of his appeal would have been different if appellate counsel had made this argument, and Petitioner is not entitled to relief under § 2255 for this claim of ineffective assistance of counsel.

6. Weight of the Drugs

Petitioner next argues that the Court's decision to defer ruling on his motion to retest drugs constitutes plain error and that appellate counsel's failure to argue this issue establishes that appellate counsel was ineffective. As Petitioner cannot establish that counsel was deficient for making the professional determination to not make this argument or that he has incurred any prejudice from counsel making the professional determination to not make this argument, Petitioner is not entitle to relief on this claim of ineffective assistance of counsel.

As set forth above, prior to trial, Petitioner filed a pro se motion to retest the drugs seeking to reweigh the drugs Owens had purchased from Petitioner during the controlled buy [Doc. 110]. In support of this motion, Petitioner stated that he needed the drugs to be weighed for "an adequate defen[s]e," set forth documentation of what he referred to as three different

28

weights of the evidence,[10] and asked that the drugs be reweighed "to ensure an accurate weight and to ensure that the weight is above the 50 gram minimum of the charging statute . . . [and] to inquire into whether the weight fluctuated and changed after the lab test" [*Id.* and Doc. 121]. Respondent opposed the motion on the grounds that Petitioner had not presented any evidence to raise a "reasonable dispute" as to the weight of the drugs [Doc. 117]. The magistrate judge recommended that the Court deny the motion for the same reason, specifically noting that the lowest weight of drugs Petitioner had set forth in his motion was still more than ten percent greater than the quantity of drugs necessary to support the charge [Doc. 122].

At the pretrial conference on November 9, 2009, the Court deferred ruling on the motion to retest the drugs until after trial, reasoning that the weight of the drugs was an issue for sentencing, rather than trial, as Petitioner did not dispute the existence of drugs, but rather the weight of the drugs [Doc. 192 p. 18–29]. The jury ultimately found Petitioner guilty of distributing fifty or more grams of a mixture and substance containing cocaine base [Doc. 133]. After trial, the Court rejected the magistrate judge's report and recommendation and granted Petitioner's motion to retest the drugs [Doc. 162]. When the drugs were retested, the lab report stated that they weighed thirty-seven grams [Docs. 167-1 and Doc. 190 p. 6–7].

Petitioner's standby counsel urged Petitioner to seek relief from the Court based on the new post-trial weight of the drugs, and the Court provided Petitioner with the post-trial testing lab report [Docs. 167-1 and 190 p. 6–7]. Petitioner, however, never sought any relief from the Court based on this post-trial weight of the drugs [Docs. 190 and 191], and Petitioner specifically

---

[10] Petitioner specifically relied on the reference to approximately 60 grams of drugs in the affidavit in support of forfeiture warrant, the reference to approximately two ounces in the notice of property seizure and forfeiture of conveyances, and the finding that the drugs weighed 55.6 grams in the TBI's official forensic chemistry report [Doc. 121 p. 2–5].

rejected standby counsel's advice that he should seek relief based thereon in writing [Doc. 167-3]. Further, at the pre-sentencing hearing wherein the Court provided Petitioner with a copy of the post-trial lab report showing that the drugs had been reweighed at thirty-seven grams and attempted to address this report, Petitioner appeared indifferent to the report and instead chose to again argue that standby counsel had been ineffective and that the Court did not have jurisdiction over the case [Doc. 190 p. 6–70]. Due to Petitioner's seeming indifference to this report and any issues stemming therefrom, the Court ultimately excused a witness from the lab which had done the report from the hearing without the witness testifying [Doc. 190 p. 6–70, 25–26].

In his appellate brief, counsel argued that the Court erred in sentencing Petitioner under 21 U.S.C. § 841(b)(1)(A), which required a finding that Petitioner distributed fifty or more grams of cocaine and carried a mandatory life sentence, relying on the post-conviction weight of the drugs to assert that it was undisputed that the drugs only weighed thirty-seven grams [Sixth Circuit Case No. 10-5694, Doc. 76 p. 34–37]. Appellate counsel set forth the following facts in his brief related to this argument: (1) the magistrate judge denied Petitioner's pretrial motion to retest the drugs; (2) the Court held Petitioner's motion to retest the drugs in abeyance before trial based on the Court's determination that it was a sentencing matter; (3) the Court granted Petitioner's motion to retest the drugs after trial; (4) the lab report for the post-trial reweighing of the drugs showed that they weighed thirty-seven grams; (5) the lab report showing the post-trial drug weight of thirty-seven grams was given to Petitioner by the Court and discussed at a Court hearing; and (6) the post-trial weight of the drugs was never specifically discussed at sentencing [*Id.* at 9–10 and 34–36]. The Sixth Circuit held that no plain error occurred when the Court sentenced Petitioner for distributing more than fifty grams of cocaine, as the Court was bound by

30

the jury's finding that Petitioner distributed at least fifty grams of cocaine, which was adequately supported by the testimony at trial [Doc. 201 p. 3].

Petitioner has not established that appellate counsel was deficient for making the professional determination not to argue that the Court's decision to defer ruling on the motion to retest the drugs was error. As set forth above, appellate counsel set forth in detail all background and procedural facts related to the underlying criminal proceedings, and specifically addressed the relevant procedural facts relating to Petitioner's motion to retest the drugs and the Court's rulings thereon, including the Court's decision to defer ruling on the motion until after trial based on its determination that it was sentencing issue, in the appellate brief.

Accordingly, it is clear that Petitioner's appellate counsel was aware of the facts underlying the argument Petitioner makes in his § 2255 motion, and made a professional decision not to argue on appeal that the Court's deferral of ruling on the motion to retest the drugs was error, but instead to assert that sentencing Petitioner under 21 U.S.C. § 841(b)(1)(A) (eff. date April 15, 2009, to Aug. 2, 2010) despite the post-trial weight of the drugs was error. Petitioner has not overcome the strong presumption that counsel's decision was reasonable or showed that this decision violated his constitutional right to counsel.

Petitioner further cannot establish that he was prejudiced by appellate counsel not making this argument as, had appellate counsel argued that the Court erred in deferring its ruling on the motion to retest the drugs, that argument would not have changed the result of the appeal. The Sixth Circuit applies an abuse of discretion standard to such rulings. *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2003) (holding that a district court does not abuse its discretion in refusing to reweigh drugs "[w]hen nothing is offered to raise such a 'reasonable dispute' over the weight of the drugs," and that being close to the threshold weight is not enough). As Petitioner

31

did not preserve this procedural objection by giving the Court the opportunity to address it, however, the Sixth Circuit would have reviewed the Court's decision for plain error. *United States v. Vonner*, 513 F.3d 382, 385–86 (6th Cir. 2008).

The Court acknowledges that, as the Sixth Circuit specifically found, that the Court was bound at sentencing by the jury's finding that Petitioner distributed fifty grams of cocaine, the Court arguably erred when it determined that the issue of the weight of the drugs was an issue for sentencing, rather than trial. The Sixth Circuit has specifically held, however, that the "proper weight for determining sentence is the weight at the time of the offense, not some later weight." *Kinnard*, 313 F.3d at 936. Moreover, the Court's decision to defer ruling on Petitioner's motion the retest the drugs effectively denied Petitioner's request to retest the drugs prior to trial. As Respondent and the magistrate judge correctly noted in their filings relating to Petitioner's motion to retest the drugs, Petitioner did not set forth any evidence to reasonably dispute the weight of the drugs in his motion. Thus, under binding Sixth Circuit precedent, it would have been proper for the Court to deny Petitioner's motion to retest the drugs. *Id.* at 935–36.

Any error resulting from the Court arguably applying an incorrect standard to Petitioner's motion to retest the drugs therefore occurred after trial, when the Court granted Petitioner's motion. This post-trial reweighing of the drugs did not affect Petitioner's substantial rights, however, nor did it seriously affect the fairness, integrity, or public reputation of the proceedings.[11] Accordingly, Petitioner cannot establish that he was prejudiced by counsel's

---

[11] Petitioner incorrectly asserts that the jury could have found him not guilty of possession of fifty grams or more of cocaine if the Court had granted his motion to retest the drugs before trial. Petitioner never took the position that the previously-tested drugs did not exist or had disappeared, however, and the evidence of Petitioner's guilt on Count One at trial was overwhelming. Thus, the best case scenario for Petitioner would have been that the Court granted his motion to have the drugs reweighed before trial, that the drugs weighed less than fifty

32

decision not to argue that the Court erred by deferring ruling on the motion to retest the drugs, as any such argument would not have changed the result of the appeal.

Based on the foregoing, the Court finds that Petitioner has not established that appellate counsel was deficient in not raising the issue of the Court's decision to defer ruling on the motion to retest the drugs or that he suffered any prejudice from this decision. Petitioner is therefore not entitled to relief under § 2255 on this claim of ineffective assistance of counsel.

7. Alleged Tampering with or Alteration of the Drugs

Petitioner next asserts that appellate counsel was ineffective for not arguing that the different weights of the drugs established that the government had tampered with, altered, and/or failed to preserve evidence. The Court disagrees.

First, in the appellate brief, appellate counsel thoroughly set forth all relevant facts relating to the pretrial and post-trial weights of the drugs. Appellate counsel was clearly aware of the facts relating to the different weights of the drugs and made a professional determination not to include this argument on appeal. Moreover, there is a complete absence of evidence that anyone tampered with, altered, or failed to preserve the drugs in bad faith. As such, the Court finds that appellate counsel's decision not to make this argument on appeal was reasonable.

Further, Petitioner has not shown any prejudice from the fact that appellate counsel did not raise this argument, as the result of his appeal would not have been different under any standard of review had appellate counsel done so. Petitioner's counterintuitive argument appears to be that the government prosecuting him for distributing drugs intentionally tampered with,

---

grams prior to trial, and that the jury then found that the later, pretrial weight of the evidence was more credible than the weights which were closer in time to the offense. Such a finding would have only affected Petitioner's sentence, not the jury's verdict as to guilt or innocence.

altered, and/or failed to preserve the drugs in a manner which would favor Petitioner by decreasing the weight of the drugs. Petitioner has cited no reason that the prosecution would have wanted to favor Petitioner by decreasing the weight of the drugs which were used to convict him, or how any such decrease in the weight of the drugs could have violated his constitutional rights.

Moreover, even if the Court assumes Petitioner could somehow establish that the decreasing weight of the drugs violated any right, Petitioner has not cited any evidence to support the assertion that anyone tampered with, altered the drugs, or failed to preserve the drugs in bad faith. This omission is fatal. *Illinois v. Fisher*, 540 U.S. 544, 546–47 (2004) (holding that where evidence is not materially exculpatory, but rather "potentially useful," there must be a showing of bad faith to establish a due process violation resulting from the destruction thereof).

Accordingly, Petitioner is not entitled to relief under § 2255 on this claim of ineffective assistance of counsel.

8. Denial of Counsel

Petitioner alleges that appellate counsel should have argued that Petitioner's Sixth Amendment right to counsel at trial was violated by the fact that standby counsel did not step in as trial counsel when Petitioner requested such representation at the pretrial conference eight days before trial. Appellate counsel did argue, however, that although Petitioner had waived his right to counsel, the Court erred and violated Petitioner's Sixth Amendment right to counsel by not having standby counsel step in as trial counsel because Petitioner's request for appointment of trial counsel was not accompanied by a request for a continuance and was not made on the day of or during trial. The Sixth Circuit found this argument to be without merit [Doc. 201 p. 3].

Petitioner's argument in his § 2255 motion that his Sixth Amendment right to counsel was violated by the fact that standby counsel did not step in as trial counsel when Petitioner requested such assistance eight days before trial is substantively identical to the claim appellate counsel raised and the Sixth Circuit addressed on direct appeal. Appellate counsel made a well-reasoned and well-researched argument on this issue which was more than professionally reasonable. As such, Petitioner is not entitled to relief under § 2255 for this claim of ineffective assistance of counsel.

9. <u>Sufficiency of the Indictment</u>

Finally, Petitioner asserts that appellate counsel was deficient for not raising the argument that the indictment was deficient because it did not include the basis for the federal jurisdiction over the offense, which Petitioner alleges is an essential element of the offense. This claim is substantively identical to the claim appellate counsel raised and the Sixth Circuit addressed on direct appeal. Appellate counsel set forth Petitioner's argument on this issue in the appellate brief in a manner that was more than professionally reasonable. Petitioner is not entitled to relief under § 2255 for this claim of ineffective assistance of counsel.

For the foregoing reasons, Petitioner has failed to demonstrate he is entitled to relief under § 2255. Petitioner's motion to vacate, set aside or correct sentence [Doc. 203] will be **DENIED**. Petitioner's pending motion to amend his § 2255 motion [Doc. 230] will be **GRANTED**. Petitioner's motion for leave to conduct discovery [Doc. 231] and motion for status hearing [Doc. 233] will be **DENIED as moot** in light of the Court's denial of the § 2255 motion. As Petitioner has concluded his direct appeal of the judgment and likewise filed the instant motion to vacate under § 2255, his motion for copies for his appeal will also be **DENIED as moot** [Doc. 195]. As the motion to vacate, the answer, and the records of the case

35

conclusively show that Petitioner is not entitled to relief under § 2255, the Court will not hold an evidentiary hearing in this case and Petitioner's motion for an evidentiary hearing [Doc. 232] will be **DENIED**.  This action will be **DISMISSED**.

The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER SHALL ENTER.**

**E N T E R :**

_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

36